Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| EDISON JR. PELLICIER MATEO | | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación |
|---|---|---|
| Parte Recurrente | TA2026RA00198 | |
| v. | | QEE Núm. 316-25-174 |
| DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN | | Sobre: Apropiación Ilegal o su Tentativa; Contrabando; Abuso o Mal Uso de Privilegios |
| Parte Recurrida | | |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparece por derecho propio y de manera *pauperis*[1] el señor Edison Jr. Pellecier[2] Mateo (señor Pellecier Mateo o recurrente) mediante el recurso de epígrafe, suscrito el 7 de abril de 2026, y recibido por nuestra Secretaría el 17 de abril de 2026.[3] Solicita que revoquemos la *Resolución* notificada el 24 de febrero de 2026, por la División de Querellas Disciplinarias del Departamento de Corrección y Rehabilitación (DCR).[4] Mediante el referido dictamen, la agencia encontró al recurrente incurso de infringir los Códigos 127 (apropiación ilegal o su tentativa), 200 (contrabando) y 222 (abuso o mal uso de privilegios) del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* Reglamento Núm. 9221 de 8 de octubre de 2020.

---

[1] El señor Pellecier Mateo acompañó una *Declaración en Apoyo de Solicitud para Litigar como Indigente (in forma pauperis)* debidamente cumplimentado y juramentado. Se autoriza la litigación *in forma pauperis.*
[2] En el epígrafe del recurso se reprodujo el título tal cual aparece en la resolución recurrida. Sin embargo, el recurrente comparece en los escritos radicados ante la agencia y ante este Tribunal como Edison Jr. Pellecier Mateo, y no Edison Jr. Pellicier Mateo. Por ello, en esta sentencia, nos referimos a su persona como Edison Jr. Pellecier Mateo.
[3] *Revisión Judicial*, SUMAC-TA, entrada 1.
[4] *Resolución, Íd., Apéndice del recurso,* anejo IV.

Examinado el escrito, así como el *Escrito en Cumplimiento de Resolución*[5] radicado por la Oficina del Procurador General, en representación del DCR, y los documentos que conforman los respectivos apéndices, *confirmamos* el dictamen recurrido.

## I.

El 11 de diciembre de 2025, el oficial Rafael Feliciano González (oficial Feliciano González) presentó una querella disciplinaria contra el señor Pellecier Mateo[6], por hechos ocurridos el 10 de diciembre de 2025, a las 3:00 p.m. La descripción específica del acto fue la siguiente:

> Informo que este confinado al salir del área escolar pasó por una inspección de la K9 y este estaba sospechoso de tener algo oculto y lo procedí a pasar al área de admisiones para una radiografía está revelando tener algo. Procedí a un registro al desnudo ocupándole una funda transparente de cierre a presión con polvo adentro y el confinado me indicó que era harina para pancake. Se la ocupé y procedí a realizarle la querella.[7]

La querella fue entregada al señor Pellecier Mateo y sus derechos leídos el 12 de diciembre de 2025.

El 2 de enero de 2026, se presentó el *Informe de Investigación*, en el que se dio por concluida la investigación interna del incidente.[8] El 8 de enero de 2026, el DCR citó al señor Pellecier Mateo para la vista administrativa[9] y se presentó el reporte de cargos en su contra. El informe precisó que el recurrente violentó los siguientes códigos: (1) 127 sobre apropiación ilegal o su tentativa; (2) 200 sobre contrabando, y (3) 222 sobre abuso o mal uso de privilegios.[10]

La vista disciplinaria se celebró el 11 de febrero de 2026. La querella y el informe de investigación fueron leídos y discutidos con el señor Pellecier Mateo. Este no admitió la violación a la norma. La

---

[5] *Escrito en Cumplimiento de Resolución, Íd.*, entrada 4.
[6] *Informe Disciplinario (Querella), Íd.*, anejo I.
[7] *Íd.*
[8] *Informe de Investigación, Íd.*, entrada 4, anejo I.
[9] *Citación para [la] vista administrativa disciplinaria, Íd.*, entrada 1, anejo III.
[10] *Reporte de cargos, Íd.*, anejo III.

resolución recurrida detalla la evidencia evaluada por el oficial examinador de vistas disciplinarias.[11]

El 24 de febrero de 2026, el DCR notificó su *Resolución* al señor Pellecier Mateo.[12] En esta, formuló las siguientes determinaciones de hechos:

> Que al Confinado Querellado se le tomó juramento al inicio de la audiencia.

> Que el 10 de diciembre de 2025, el Confinado Querellado salía del área escolar y proceden a realizarle una inspección por la Unidad Canina.

> El Oficial Feliciano González observa que el Confinado Querellado se encontraba sospechoso y ante el riesgo de tener algo oculto procede y lo escolta al área de admisiones.

> Estando en el área de admisiones le realizan una radiografía y se detecta que tiene algo oculto.

> El Oficial Feliciano González procede a realizarle un registro al desnudo al Confinado Querellado y le ocupa una funda transparente de cierre a presión con un polvo en su interior. En dicho momento el Confinado Querellado expresa que es polvo de harina de pancake.

> El material fue ocupado y obra en el expediente como evidencia.

> Que el Confinado Querellado en la audiencia argumentó que el informe de querella no cuenta con los códigos en el renglón número 8, no se cumplió con la Regla 7, que no tiene testigos y no se cumple con el debido proceso de ley.

> Evaluados los planteamientos se declaran no ha lugar.

> Surge del Informe de Querella que los códigos imputados están mencionados de forma fehaciente en el renglón 7 del informe de querella. Además, están enumerados en el reporte de cargos y en la citación, facilitando un mayor entendimiento de los hechos.

> Lo que surge del informe de querella es un error al no incluir el número del código en el renglón número 8. Este elemento no produce ninguna invalide[z] en el informe de querella y tampoco viola el debido proceso de ley establecido en el Reglamento 9221.

---

[11] Según la resolución recurrida, la evidencia tomada en consideración o declaraciones de testigos anejados al informe disciplinario (querella) consistió de: la declaración del querellante Rafael Feliciano González, oficial de custodia, K-9; la declaración del confinado querellado en la investigación y en la audiencia; evidencia mediante foto; el informe de investigación; y la totalidad del expediente. *Resolución, Íd., Apéndice del recurso,* anejo IV.

[12] *Resolución, Íd.*

> En cuanto a que no se menciona[n] testigos en el informe de querella, el mismo no es necesario para validar los hechos imputados, basta con la evidencia que le fue ocupada y que obra en el expediente con una descripción clara y detallada de los hechos.
>
> La Regla 7 no tiene que ver con la codificación del informe de querella, esta regla dispone que la Oficial de Querellas "revisará la querella para determinar si está redactada adecuadamente, asegurándose que contenga una narración clara y detallada de los hechos del caso y que la misma surjan los elementos de la comisión de un acto prohibido".
>
> En el caso que nos ocupa el informe de querella cumple con los requisitos antes mencionados.[13]

A la luz de tales determinaciones, y a base de la totalidad del expediente, el DCR encontró al señor Pellecier Mateo incurso de infringir los Códigos 127 (apropiación ilegal o su tentativa), 200 (contrabando) y 222 (abuso o mal uso de privilegios) del *Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional,* Reglamento Núm. 9221 de 8 de octubre de 2020 (Reglamento Núm. 9221).  Como sanción se le impuso la privación de sus privilegios de visita, comisaría, recreación activa, correspondencia (excepto la legal), actividades especiales y cualquier otro concedido por la institución, por un término de cincuenta (50) días, consecutiva con cualquier otra medida disciplinaria impuesta.

El 27 de febrero de 2026, el señor Pellecier Mateo presentó una solicitud reconsideración[14], que fue rechazada de plano por la agencia.

Inconforme aún, el 7 de abril de 2026, el señor Pellecier Mateo acudió ante este Tribunal de Apelaciones, mediante el presente recurso de *Revisión Judicial* y apuntó la comisión de los siguientes errores:

> Primer error: Erró el oficial de K-9 Rafael Feliciano Gonz[á]lez (Querellante) al indicar en el Informe Disciplinario (Querella)[,] en el renglón n[ú]mero (11) que al proceder a realizarle un registro al desnudo al

---

[13] *Íd.*
[14] *Solicitud de Reconsideración de Decisión de Informe Disciplinario para Confinado, Íd.,* anejo V, págs. 8-13.

peticionario[,] el oficial querellante alega que le ocupó una funda transparente de [c]ierre a presión con polvo adentro y que el peticionario le alega que era harina para hacer *pancake* (v[é]ase anejo I) en el cual el oficial querellante de la unidad de K-9 erró en la aplicación e interpretación de las leyes y los reglamentos que se le ha encomendado administrar en la ocupación del contrabando con polvo adentro[,] ya que el protocolo a seguir es llamar a la policía de Puerto Rico para la realización de prueba de campo[.] [S]egún lo establecido[,] a los oficiales de [la] unidad K-9 especializados en encontrar contrabando en las Instituciones Penales de P.R. y es de preguntar[s]e porqu[é] dicho oficial no actu[ó] m[á]s [allá] de duda razonable[,] lesionando as[í] los derechos fundamentales del peticionario, carente de vera[c]idad y contrari[o] a derecho.

Segundo error: Erró el oficial querellante tanto como el Juez Examinador[;] el querellante por intervenir con el peticionario sin este contar con la presencia de otro oficial que validara todo el proceso del registro[,] ya que es de suma importancia y vital a la hora de incautar contrabando y no [quede más allá] de duda razonable de que el querellante realiz[ó] todo el debido proceso de ley según lo establecido[,] ya que el peticionario cuenta con unos derechos los cuales se tienen que salvaguardar siendo este imparcial para que se respeten los derechos que todas las partes involucradas[,] garantizando la igualdad de oportunidades y la ausencia de sesgos o prejuicios, cosa que no pasó[,] ya que en el Informe Disciplinario (Querella)[,] [en] el renglón n[ú]mero trece (13) no cuenta con un testigo que valide los hechos y argumentos que el oficial querellante alega. (V[é]ase anejo I).

Tercer error: Erró el Juez Examinador cuando hizo mención en la Resolución[,] en el rengl[ó]n n[ú]mero catorce (14) que la presencia de un testigo no es necesaria para validar los hechos imputados[,] que solo basta con la evidencia incautada, lo cual para la defen[s]a no tuvo validez[.] [L]o expuesto por el peticionario siendo un proceso parcial[,] favoreci[é]ndose lo alegado por el oficial querellante sin tomar en cuenta la defensa del peticionario, una rotunda violaci[ó]n al debido proceso de ley[,] ya que[,] ante la ley[,] todos somos iguales. (V[é]ase anejo IV).

Cuarto error: Erró el oficial querellante al no incluir el Informe Disciplinario (Querella) renglón n[ú]mero ocho (8) los c[ó]digos por [los cuales] el peticionario será procesado administrativamente y que pueda el peticionario saber cu[á]les son los c[ó]digos que se le imput[a]n[,] ya que la información que surge de la querella es una información con la cual el peticionario se puede defender de los cargos que se están presentando en su contra, lo que le hace ser una "Querella Defectuosa". Conforme al Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional n[ú]mero 9221 fecha 8 de octubre de 2020. La regla 7 expresa [sobre la] querella

defectuosa: El oficial de querellas inmediatamente revisará la querella para determinar si está redactada adecuadamente, asegurándose que contenga una narración clara y detallada de los hechos del caso y que de la misma surjan los elementos de la comisión de un acto prohibido. (1) Si hay deficiencias en la querella, el oficial de querellas devolver[á] la misma al querellante para que este haga las correcciones de rigor, seg[ú]n les sean señaladas dentro de un término de 2 días laborables. (V[é]ase anejo I).

Quinto error: Erró el Juez Examinador al admitir en la Resolución que era un error al no incluir el número del c[ó]digo en el rengl[ó]n n[ú]mero 8 en el Informe Disciplinario (Querella) aceptando que dicha querella s[í] era "Defectuosa" tal como el peticionario hizo mención y a[ú]n así[,] a sabienda[s,] procedi[ó] a encontrar al peticionario "Incurso" de la misma no cumpliendo con las garantías mínimas del debido proceso de ley en su vertiente procesal y en conformidad con el Reglamento 9221 del [DCR] y [la LPAU]. (V[é]ase anejo IV).

Sexto error: Erró el Juez Examinador al denegar la solicitud del peticionario de desestimar la querella por todo lo antes expuesto y mencionado m[á]s todo lo que en derecho procediera, al actuar irrazonable e ilegalmente, ya que su determinación final conduce a la comisión de una injusticia[,] ya que su interpretación produce resultados incompatibles o contrarios al propósito del estatuto interpretado y a su pol[í]tica p[ú]blica, violentando el Reglamento 9221 de 8 de octubre de 2020 la Regla 26: Término para celebrar la vista – El Oficial Examinador celebrará una vista administrativa dentro de un término no mayor de treinta (30) días laborables siguientes a la conclusión del Informe de Investigación. Si el Oficial Examinador no celebra la correspondiente vista administrativa dentro de este término, la querella disciplinaria será automáticamente desestimada, salvo justa causa o caso fortuito, debidamente documentado. Lo cual se le violentó el debido proceso de ley al peticionario[,] ya que en el documento intitulado Informe Disciplinario (Querella) que se le entrega al peticionario la misma fue con fecha 12 de diciembre de 2025 (v[é]ase anejo I) y el documento intitulado "Citación Para Vista Administrativa Disciplinaria"[,] la misma indica que la vista administrativa será celebrada y se celebró el 11 de febrero de 2026, llev[á]ndolo a días laborables como establece y estipula el Reglamento 9221, pasaron treinta y ocho (38) días laborables[.] [A]l peticionario se le celebró la vista 8 d[í]as m[á]s tarde (v[é]ase anejo III) en violación a la Regla 26 del Reglamento de Corrección. Para dicha vista administrativa tardía no existe ninguna causa justificada, fuerza mayor, desastre o caso fortuito que justifique la celebración de la vista fuera del término establecido.

Séptimo error: Erró el Juez Examinador a[l] emitir Resolución tardía[,] ya que[,] como se desprende del documento intitulado "Citaci[ó]n Para Vista

Administrativa Disciplinaria"[,] dicha vista se celebró el 11 de febrero de 2026 (v[é]ase anejo III) y el documento intitulado "Resolución" se le entreg[ó] al peticionario el 24 de febrero de 2026 (v[é]ase anejo IV) que[,] llev[á]ndose a d[í]as laborables como establece y estipula el Reglamento 9221[,] ocho (8) días laborables pasaron[,] violentando el debido proceso de ley de la Regla 28 [del Reglamento Núm. 9221]: El oficial examinador formar[á] la correspondiente determinación y emitirá la pertinente resolución dentro de un t[é]rmino directivo de siete (7) d[í]as laborables de celebrada la vista. Esta resolución será notificada al querellado al día siguiente de entregada la misma[.] [E]rró en la aplicación e interpretación de las leyes y los reglamentos que le ha encomendado administrar, lesionando as[í] los derechos fundamentales del peticionario al actuar as[í] arbitraria, caprichosa e ilegalmente habiendo emitido una Resolución final carente de base racional y contraria a derecho.

Octavo error: Erró el [DCR] al violentar al peticionario ser asistido por el Investigador de Querellas, un derecho procesal reconocido y protegido por el Tribunal Supremo de Puerto Rico fundamental para la defensa y equidad del confinado en procesos disciplinarios internos. (V[é]ase anejo II) [Y]a que[,] el peticionario sin haberse celebrado una vista administrativa el 12 de diciembre de 2025 fue dado de baja del [á]rea escolar donde ejercía su curso vocacional de barbería, curso que ejercía con un fiel cumplimiento desde el año 2022, las razones y argumentos que el [DCR] emiti[ó] al peticionario por el cual se le dio de baja fueron oral[es] por el oficial signado al [á]rea escolar, una determinación injusta, ilegal, lesionando los derechos fundamentales en violación al derecho de rehabilitación del peticionario y del debido proceso de ley, la respuesta del oficial fue por [haber] incurrido en la querella lo cual no justifica tal [decisión] ya que[,] como se desprende del documento intitulado Informe Disciplinario (Querella)[,] en el rengl[ó]n n[ú]mero doce (12) los [h]echos ocurridos del incidente fueron en el [á]rea de admisiones. (V[é]ase anejo I).

Noveno error: Erró el Juez Examinador al emitir Resolución de NO HA LUGAR al peticionario[,] encontr[á]ndolo incurso descansando en el incumplimiento de ley cometido por el [DCR] y sus dependencias y no en su propio criterio de razonabilidad, al emitir [una] determinaci[ó]n final, coartando el derecho del Sr. Pellecier, ya que dicha [decisión] afectó su plan institucional, ajuste, custodia y progreso, tambi[é]n afecta su rehabilitaci[ó]n y las disposiciones sobre el proceso de adjudicación establecidas en la [LPAU].

Décimo error: Erró el [DCR] al hacer caso omiso a las expresiones del peticionario audiencia de la vista disciplinaria en su contra cuando se le dio cono[c]imiento al Juez Examinador de que el oficial querellante Rafael Feliciano Gonz[á]lez, en varias ocasiones [ha] presentado tener una persecución

selectiva y no era la primera vez que dicho oficial radicaba una querella [frívola] al peticionario, quedando todo expresado [y] documentado en la vista[,] lo cual se dio conocimiento de que el peticionario contab[a] con pruebas de dichas alegaciones, lo cual no se tom[ó] en cuenta ni se [hizo] ning[ú]n tipo de investigación al respecto.[15]

Por su parte, el DCR compareció el 22 de mayo de 2026, y, de entrada, argumenta que la vista administrativa del 11 de febrero de 2026 no fue celebrada tardíamente, sino dentro del término de treinta (30) días laborables reglamentarios, puesto que la investigación de la querella culminó el 2 de enero de 2026. En lo relacionado a los códigos imputados, el DCR señala que el señor Pellecier Mateo no tuvo dudas sobre el contenido de la querella cuando esta fue leída ante él. En otro extremo, arguye que no era el protocolo correcto el contactar a la policía porque el contrabando ocupado no fungía como material delictivo, lo cual es consistente con la reglamentación aplicable. Además, enfatiza que la presencia de testigos era innecesaria, pues la evidencia ocupada era suficiente para validar los hechos imputados. El DCR también puntualiza que se cumplió con el término directivo de siete (7) días establecido por reglamento para emitir la resolución. Asimismo, explica que las alegaciones sobre que el señor Pellecier Mateo fue dado de baja de un curso vocacional de barbería responden a eventos posteriores a los de la querella, que no formaron parte del proceso objeto del dictamen recurrido y, por tanto, tampoco pueden ser considerados por este Tribunal. Por último, el DCR plantea que el planteamiento de persecución selectiva por parte del oficial Feliciano González constituye una causa de acción civil en daños y perjuicios, separada e independiente al trámite administrativo.[16]

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[15] *Revisión Judicial,* SUMAC-TA, entrada 1.
[16] *Escrito en Cumplimiento de Resolución, Íd.*, entrada 4.

## II.

## A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[17]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[18]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[19] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[20] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[21]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley

---

[17] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[18] *Transp. Sonnell, LLC v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[19] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[20] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).
[21] *Otero v. Toyota*, supra, pág. 728.

Núm. 38-2017, señala que estas pueden ser revisadas en todos sus aspectos por el tribunal.[22]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*,[23] el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*,[24] y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[25] En conclusión, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y, como corolario, estos foros deben revisar las conclusiones de derecho en todos sus aspectos; ello, como mecanismo interpretativo del poder judicial.[26]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el ente agencial actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones

---

[22] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.
[23] *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).
[24] *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024)
[25] *Vázquez v. Consejo de Titulares,* supra.
[26] *Íd.*

carentes de una base racional, o (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[27]

**B.**

El Departamento de Corrección y Rehabilitación (DCR), como custodio de la población correccional, ha de supervisar y velar por el cumplimiento con la política pública de la rehabilitación que tiene el encarcelamiento, evitando recurrir a lo punitivo.[28] Así, esta agencia tiene la potestad de reglamentar las instituciones penales para fomentar la restitución moral y reinserción social del confinado. Para accionar esto, el DCR tiene la facultad de crear reglamentos, autorizar manuales y adjudicar procedimientos.[29]

Para fomentar el orden y desalentar las conductas no permitidas dentro de las facilidades correctivas, el DCR adoptó el *Reglamento para establecer el procedimiento disciplinario de la población correccional,* Reglamento Núm. 9221 de 8 de octubre de 2020 (Reglamento Núm. 9221). Mediante la Regla 4 de este cuerpo, la agencia define un acto prohibido como "cualquier acto que implique una violación a las normas de conducta de la institución que conlleve la imposición de medidas disciplinaras, incluyendo cualquier acto u omisión, o conducta tipificada como delito".[30] Entonces, cuando se comete una acción de tal naturaleza:

> Cualquier persona, visitante, miembro de la población correccional, empleado civil de la institución, oficial correccional, funcionario del Departamento de Corrección y Rehabilitación o empleado de otra agencia que trabaje en la institución, puede presentar una querella contra un miembro de la población correccional, utilizando el formulario suministrado para tales propósitos, en las siguientes circunstancias:

---

[27] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[28] Art. VI, Sec. 19, Const. ELA [Const. PR], LPRA, Tomo 1.

[29] Artículos 5 y 7 del *Plan de Reorganización del Departamento de Corrección y Rehabilitación,* Ley Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 5, Art. 7.

[30] Reglamento para establecer el procedimiento disciplinario de la población correccional, Reglamento Núm. 9221 de 8 de octubre de 2020 (Reglamento Núm. 9221), Regla 4 (definiciones), pág. 6.

1. Cuando sea víctima de un acto o incidente prohibido provocado por un miembro de la población correccional; o

2. Cuando sea testigo de un acto o incidente prohibido, o infracción a las normas y reglamentos del Departamento de Corrección y Rehabilitación por parte de un miembro de la población correccional.

3. Tiene motivo fundado para creer que un miembro de la población correccional cometió alguna infracción a las normas o reglamentos del Departamento de Corrección y Rehabilitación; o

4. Cuando tenga conocimiento de que un miembro de la población correccional utilizó o presentó una alegación falsa que provocó o intentó provocar el inicio de una investigación por parte de la Oficina de Investigaciones del Sistema Correccional (OISC) o de cualquier otro foro investigativo, de cuyo informe se desprenda, que la alegación se realizó a sabiendas de su falsedad.

5. Cuando tenga conocimiento de que un miembro de la población correccional provocó o intentó obtener algún cambio o traslado, transacción de personal o cualquier otro en su beneficio basado en una alegación a sabiendas de su falsedad.

6. Cuando se tenga conocimiento de actos que alteren la provisión de los servicios, ante reclamos viciosos, falsos o improcedentes por parte de uno o varios miembros de la población correccional.[31]

A su vez, la querella debe detallar lo siguiente: (1) una descripción clara y detallada del incidente que la originó, incluyendo la fecha, hora y lugar de los hechos; (2) el nombre del confinado querellado; (3) nombre de los testigos, de esto aplicar; (4) la evidencia ocupada; (5) el manejo de la prueba; (6) el nivel y el código correspondiente al acto imputado; (7) el nombre del querellante; (8) la identificación precisa del querellante, incluyendo su puesto, número de placa y lugar de trabajo; (9) la fecha de radicación de la querella, y (10) de haberse obtenido alguna información confidencial, se debe proceder de acuerdo con los preceptos de las Reglas 31 y 32 del Reglamento Núm. 9221, *supra*.[32]

---

[31] *Íd.*, Regla 6, págs. 14-15.
[32] *Íd.*, págs. 15-16.

Una querella puede considerarse defectuosa si esta no contiene una narración clara y detallada de lo sucedido y si de esta no se desprenden los elementos del acto prohibido.[33] De existir deficiencias en la querella, se devolverá al querellante para que se corrija dentro de dos (2) días laborables.[34]

Ahora bien, entre las conductas no permitidas por el Reglamento Núm. 9221, se codifican las siguientes, las cuales son pertinentes al recurso de epígrafe:

(127) Apropiación Ilegal o su Tentativa - Consiste en malversar, defraudar, apropiarse, ejercer control ilegal, usar, sustraer apoderarse, o en cualquier forma hacer propio cualquier bien, cosa, artículo, información, documentos o propiedad perteneciente a otra persona, o al Gobierno de Puerto Rico, ya sea en forma temporal o permanente, sin mediar violencia o intimidación.

[…]

(200) Contrabando - Consiste en la posesión de artículos o materiales considerados no peligrosos, que no sean suministrados o autorizados por el Departamento de Corrección y Rehabilitación.

También[,] se considerará contrabando aquellos artículos en exceso de los permitidos en el área de vivienda, tales como los artículos de consumo, o cualquier otro establecido por el Departamento de Corrección y Rehabilitación, excluyendo aquellos tipificados como contrabando peligroso.

[…]

(222) Abuso o Mal Uso de Privilegios - Consiste en el abuso, arbitrariedad, atropello, extralimitación o mal uso de privilegios concedidos mediante reglamentación por el Departamento de Corrección y Rehabilitación.[35]

---

[33] *Íd.*, Regla 7, pág. 18.

[34] *Íd.*

[35] Regla 15 del Reglamento Núm. 9221, *supra*, págs. 32-33; *Íd.*, Regla 16, págs. 40 y 44. Hay dos (2) niveles establecidos para la escala disciplinaria de los actos prohibidos. La Regla 14 del Reglamento 9221, *supra*, define ambas categorías como sigue:

Nivel I - Actos prohibidos, tentativa de actos prohibidos, como los tipificados en el Código Penal de Puerto Rico como delito grave y en las leyes especiales. Violaciones administrativas que por su propia naturaleza y magnitud constituyen riesgo o amenaza a la tranquilidad, la seguridad y el funcionamiento institucional; o a cualquier persona.

Nivel II - Actos prohibidos, tentativa de actos prohibidos, como los tipificados en el Código Penal de Puerto Rico como delito menos grave y en las leyes especiales. Violaciones administrativas que por

Si el acto prohibido constituye una conducta tipificada como delito por el Código Penal de Puerto Rico o por alguna ley especial y requiere el inicio de un procedimiento criminal, la autoridad competente institucional notificará a las autoridades correspondientes (estatales o federales). En estos casos, el procedimiento disciplinario administrativo podrá llevarse a cabo independientemente del curso que tome el procedimiento criminal ordinario.[36]

Tras la adecuada presentación de la querella, corresponde la celebración de una vista administrativa que ha de ser debidamente notificada a las partes.[37] Sobre el término para celebrar esta audiencia, la Regla 26 del Reglamento 9221, *supra*, indica precisamente que:

> El Oficial Examinador celebrará una vista administrativa dentro de un término no mayor de treinta (30) días laborables siguientes a la *conclusión* del Informe de Investigación. Si el Oficial Examinador no celebra la correspondiente vista administrativa dentro de este término, la querella disciplinaria será automáticamente desestimada, salvo justa causa o caso fortuito, debidamente documentado.[38]

Similarmente, el oficial examinador deberá emitir su dictamen dentro de un término *directivo* de siete (7) días laborables luego de la celebración de la vista administrativa.[39]

---

su naturaleza o magnitud perturban la paz institucional y no necesariamente constituyen una amenaza a la seguridad institucional.

*Íd.*, págs. 25-26.

[36] *Íd.,* Regla 11, págs. 22-23.

[37] *Íd.*, Reglas 24 y 25, págs. 69-73.

[38] *Íd.*, pág. 73.

[39] *Íd.*, Regla 28, págs. 74-75. Es conveniente puntuar que son términos directivos aquellos intervalos cronológicos establecidos en la ley que no se les categorizan como jurisdiccionales o de estricto cumplimiento. *In re Godinez Morales,* 161 DPR 219, 237 (2004). La contravención con el término directivo no constituye un defecto fatídico que repercuta sobre la jurisdicción del organismo adjudicativo. No obstante, el deber de las agencias de cumplir con estos plazos es de cumplimiento estricto. *Lab. Inst. Med. Ava. v. Lab. C. Boriquen,* 149 DPR 121, 136 (1999).

**III.**

El señor Pellecier Mateo alega que el DCR no procedió conforme al proceso establecido para manejar el contrabando ocupado porque debió contactarse a la Policía de Puerto Rico. Argumenta que la agencia se equivocó al avalar el registro porque este debió realizarse con un testigo presente. Añade que el foro incidió al entender que la querella no era defectuosa, aunque en ella se omitió el número de los códigos imputados y, pese a ello, encontrarlo incurso de infringir los códigos imputados. Asimismo, precisa que la vista administrativa se celebró fuera del término reglamentario sin proveer justa causa para ello. Similarmente, resalta que la *Resolución* impugnada también fue emitida luego de que expirara el término prescrito por reglamentación. También, arguye fue dado de baja de su curso vocacional de barbería sin la celebración de una vista administrativa, lo cual es contrario al debido proceso de ley. Por último, señala que el DCR se equivocó al no adjudicar su alegación sobre la persecución selectiva, debido a que el oficial Feliciano González observa un patrón en su contra y que tiene evidencia para ello.

Sin embargo, tras una lectura minuciosa de los documentos que obran en el expediente, con especial atención a la evidencia suministrada por el DCR, debemos precisar que no le asiste la razón al señor Pellecier Mateo. *Veamos.*

En primer lugar, el DCR celebró la vista conforme al término provisto por la Regla 26 del Reglamento Núm. 9221. Dicha regla indica que el término de treinta (30) días laborables transcurre desde que se culmina la investigación de la querella; es decir, del informe de investigación, y no desde la presentación del informe disciplinario. En este caso, según surge del informe de investigación, la indagación culminó el 2 de enero de 2026, la notificación de vista se hizo el 8 de enero de 2026, y la vista se llevó a cabo el 11 de

febrero de 2026.  Entre el 2 de enero de 2026, y el 11 de febrero de 2026, hay menos de treinta (30) días laborables, por lo que la vista se celebró dentro de los treinta (30) días laborables desde que culminó el informe de investigación. Ello, en cumplimiento con la citada Regla 26.

Además, los hechos imputados al señor Pellecier Mateo no necesitaban testigos para probar los elementos de los códigos imputados.  Ello, pues bastaba la ocupación de material de contrabando para que se configurara la infracción.  Al recurrente se le ocupó un material (harina), el cual no estaba autorizado a tener en la institución (apropiación ilegal); y tampoco estaba autorizado a poseer (contrabando); y con ello, usó de mala forma los privilegios concedidos mediante reglamentación del DCR (abuso o mal uso de privilegios).  Por tanto, no se requerían testigos para validar los elementos de los tres códigos imputados.

De igual modo, el que el Informe Disciplinario no incluyese el número de los códigos imputados en el encasillado número ocho (8) tampoco invalida el proceso disciplinario ni el propio informe, pues del encasillado número siete (7) del Informe Disciplinario surgen claramente de forma expresa los títulos o nombres de los tres códigos imputados, Apropiación Ilegal o su tentativa, Contrabando y Abuso o Mal Uso de Privilegios.[40]  También, el Reporte de Cargos incluyó una descripción de los hechos, y los códigos imputados con sus respectivos números de codificación y títulos.[41]  Además, el informe de investigación consigna que la querella y sus derechos le fueron leídos en voz alta; se le preguntó si los entendía y respondió que sí; se le preguntó si tenía alguna duda y contestó que no. También, se le entregó copia de la querella y el reporte de cargos.[42]

---

[40] *Íd.*
[41] *Reporte de Cargos, Íd.*, anejo III.
[42] *Informe Disciplinario (Querella),* SUMAC-TA, entrada 1, anejo I.

Asimismo, la resolución recurrida fue notificada en término puesto que la Regla 28 del Reglamento Núm. 9221, que requiere que el oficial examinador emita su dictamen dentro del término *directivo* de siete (7) días laborables de celebrada la vista y que la resolución se notifique al querellado al día siguiente. En este caso, la vista se celebró el miércoles, 11 de febrero de 2026 y la resolución se entregó al recurrente el martes, 24 de febrero de 2026; es decir, dentro del término prescrito.

En cuanto a las alegaciones de incumplimiento con el protocolo del registro, al señor Pellecier Mateo se le ocupó harina para confeccionar *pancakes*. Al tratarse de un material no delictivo, conforme a la citada Regla 11, resultaba innecesario notificar a la policía y realizar pruebas de campo.

Por otro lado, el planteamiento del recurrente de que fue dado de baja del área escolar en donde ejercía un curso vocacional de barbería y que ello presuntamente afecta su plan institucional, basta señalar que se refiere a hechos que ocurrieron con posterioridad a la resolución de la querella disciplinaria, ajenos a dicho proceso, lo que nos priva de autoridad para justipreciarlo.

Por último, el señor Pellecier Mateo aduce que el oficial examinador no examinó su alegación sobre la alegada persecución selectiva por parte del oficial querellante hacia su persona; que no era la primera vez que este oficial presentaba una querella frívola en su contra; y que él contaba con prueba para sustentar sus alegaciones, las cuales no se consideraron ni se investigaron. Sin embargo, tal y como indica el DCR en su *Escrito en Cumplimiento de Orden,* el reclamo de persecución selectiva constituye una causa de acción civil en daños y perjuicios, separada e independiente al trámite administrativo.

En fin, en su recurso, el señor Pellecier Mateo no logró rebatir la presunción de legalidad y corrección que cobija la *Resolución*

recurrida. Ante la falta de prueba contenida en el expediente administrativo que revele que la determinación del DCR no estuvo amparada en evidencia sustancial, resolvemos que no se cometieron los errores señalados por el señor Pellecier Mateo. En virtud de lo anterior, procede que se le otorgue la deferencia debida a la determinación recurrida y confirmemos la *Resolución* recurrida.

### IV.

Por los fundamentos antes esbozados, confirmamos la *Resolución* recurrida.

Notifíquese al señor Edison Jr. Pellecier Mateo, quien se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación (DCR): Institución Correccional Guerrero, Edif. 8-C-2, PO Box 3999, Aguadilla, PR 00605, o en cualquier institución en donde se encuentre.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones